UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FAROUK SYSTEMS, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 09-cv-3499** |
| | § | |
| **COSTCO WHOLESALE** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Costco Wholesale Corporation's ("Costco") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 10) and Motion for Protective Order (Doc. No. 21). For the reasons stated below, Costco's Motion to Dismiss is denied, and its Motion for Protective Order is granted in part and denied in part.[1]

## I.      BACKGROUND[2]

Plaintiff Farouk Systems, Inc. ("Farouk") is a company that manufactures high quality professional hair care and spa products, including the well-known Biosilk and CHI brands. (Pl. Second Am. Compl., Doc. No. 16, ¶ 6.) Farouk sells its products to distributors, who operate pursuant to distribution contracts with Farouk. (*Id.* ¶ 7.)

---

[1] After Defendant filed the pending Motion to Dismiss, Plaintiff filed a Second Amended Complaint without opposition (Doc. No. 16). The Second Amended Complaint is now the controlling pleading in this matter. Because Defendant indicated in its Reply brief that most of its objections remain unmitigated by this amended pleading, the Court will evaluate Defendant's Motion in light of this Second Amended Complaint. However, some of Costco's arguments with regard to Farouk's First Amended Complaint are moot, and the Court will not address them.

[2] These facts were generated from the allegations in Plaintiff's Second Amended Complaint (Doc. No. 16), which, for purposes of the Motion to Dismiss, this Court accepts as true. *See Frame v. City of Arlington*, 575 F.3d 432, 434 (5th Cir. 2009).

Farouk's authorized distributors then sell the products to professional salons and licensed stylists, where the products are either used or sold to end customers. (*Id.*) Farouk maintains that, in order to preserve and maintain the quality, image, and integrity of its products and brands, Farouk's distribution contracts prohibit its distributors from selling products to large retailers or wholesale distribution clubs. (*Id.* ¶ 8.) Accordingly, none of Farouk's authorized contractual distributors is permitted to sell products to Costco. (*Id.*) Nonetheless, Farouk contends that its products occasionally end up in the hands of retailers and wholesalers though what is known as a "diverted" market. (*Id.* ¶ 9.) According to Farouk, products sold in the diverted market are priced lower than those sold by proper distributors, and are more likely to be counterfeits. (*Id.*) Farouk maintains that it is in the process of developing and implementing technology that will enable it to track and trace its products as they move from the manufacturing facility to the market, but that this system is not, as of yet, operational. (*Id.* ¶ 10.)

According to Farouk, this dispute arose because it recently determined, through in-store monitoring, that Costco is improperly carrying Farouk's products, and that at least some of the Farouk-branded products that Costco is selling are counterfeit.[3] (*Id.* ¶ 11.) According to Farouk, it has attempted to resolve these issues with Costco outside of court, but, despite its best efforts, Costco "continues to interfere with and impede Farouk's distribution system and harm Farouk's brands." (*Id.* ¶ 16.) Farouk then filed this suit, alleging claims for relief for tortious interference with contract, unfair competition, trademark infringement and false designation of origins under 15 U.S.C. Sections 1114 and 1125(a), and seeking injunctive relief. Costco now moves to dismiss Farouk's

---

[3] Farouk uses "counterfeit" to refer to products bearing a Farouk brand name, but not manufactured by Farouk or at Farouk's level of quality control.

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     MOTION TO DISMISS

### A.     Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss for failure to state a claim, a district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*,  224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000).

### B.      Analysis

### 1.      Tortious Interference with Contract

Costco alleges that Farouk has failed adequately to plead its tortious interference claim and that this claim should accordingly be dismissed. Under Texas law, the essential elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) which is the proximate cause of plaintiff's damages; and (4) actual damages or loss. *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)). A willful act involves more than "simply participation in some act with a breaching party." *John Paul Mitchell*, 17 S.W.3d at 730. Instead, the defendant must knowingly induce one of the contracting parties to breach its obligations. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *John Paul Mitchell*, 17 S.W.3d at 730. There must be some act interfering with a contract or act persuading a party to breach—for example, offering better terms or other incentives. *Davis v. HydPro*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)). Liability for intentional interference may not be based on a simple allegation that the defendant performed certain acts; instead, there must be a finding that the defendant performed certain acts with the knowledge or belief that interference with a contract would result. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

Here, Farouk's Second Amended Complaint alleges that Costco had knowledge of Farouk's established contractual relationship with its exclusive distributors, and that Farouk's distributors "are prohibited from selling Farouk products to large retailers or

wholesalers like Costco." (*Id.* ¶ 26.) Farouk further alleges that Costco obtained large inventories of Farouk products and offered them for sale on their website and in their stores, and that "Costco could not have acquired such large inventories of Farouk products across multiple regions without intentionally inducing Farouk distributors to breach their distribution agreement." (*Id.* ¶ 27.) Finally, Farouk maintains that "Costco's aggressive efforts to sell Farouk products to salons support the inference and allegation that Costco is intentionally inducing distributors to sell to Costco in breach of their contracts with Farouk." (*Id.* ¶ 28.)

Nonetheless, Costco maintains that Farouk has failed sufficiently to allege facts to show that Costco knowingly induced Farouk's distributors to breach their contractual obligations. We disagree. While it is true that Farouk bases its allegation of tortious interference on only circumstantial factual support, Farouk has not yet had the opportunity, through discovery, to collect evidence of this alleged unlawful behavior such that it might more directly support its claims. What is material at this stage, however, is that Farouk has alleged factual allegations and enhancements that "'raise a right to relief above the speculative level,'" and thereby sufficiently stating its claim. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[4] In *5860-5888 Westheimer Ltd. v. Orvis Houston, Inc.*, 2009 WL 47124, at *2 (S.D. Tex. Jan. 6, 2009), a case relied upon by Costco, the court noted that the plaintiff "does not allege that [the defendant] in any way induced" the third party to

---

[4] The Court notes that in *John Paul Mitchell*, one of the primary cases relied upon by Costco, the Texas Court of Appeals affirmed the trial court's entry of a take-nothing judgment notwithstanding the verdict, concluding that the trial produced no evidence of inducement. *John Paul Mitchell*, 17 S.W.3d at 731. The court therefore made its determination after considering all the evidence marshaled and presented by the plaintiff. Here, by contrast, the parties have yet to conduct any discovery, and, accordingly, the only question before this Court is whether Farouk has sufficiently stated a claim, regardless of whether it can or will ultimately succeed on the merits.

5

breach its agreement with plaintiff. Here, by contrast, Farouk both alleges inducement and provides circumstantial factual enhancements to support its claim, thereby bringing its complaint over "the line between possibility and plausibility of entitlement to relief." *Twombly*, 127 S. Ct. at 1966.[5] Accordingly, the Court concludes that Farouk's claim for tortious interference need not be dismissed.

## 2.     Trademark Infringement

Costco also alleges that Farouk has failed to plead trademark infringement under 15 U.S.C. Section 114(1)(a). "To prevail on a claim of trademark infringement under the Lanham Act, the plaintiff must prove that (1) it is the owner of a registered mark and (2) the defendant's use of the mark creates the likelihood of confusion, mistake, or deception. Additionally the plaintiff must prove that the defendant used the plaintiff's mark in commerce—that is, 'in connection with the sale, offering for sale, distribution, or advertising of any goods or services.'" *Haggar Clothing Co. v. Sai Lakshmi Industries, Pvt. Ltd*, 2009 WL 2868443, at * 4 (N.D. Tex Sept. 3, 2009) (quoting 15 U.S.C. § 1114(10)(a)).

Here, Farouk has alleged all of these elements. Farouk states that it is the manufacturer of well-known BioSilk and CHI brands, and that it owns a registered trademark for its CHI Ceramic Hairstyling Irons. (Pl. Second Am. Compl. ¶¶ 6, 15.) Farouk also alleges that Costco has offered to sell counterfeit ceramic hairstyling irons bearing Farouk's CHI trademark, has provided two specific instances of such counterfeit products being sold, and has alleged that these counterfeits were being offered for sale

---

[5] In its response, Farouk argues that Texas law makes it clear that the act of tortious interference need not involve active inducement, as Texas law also recognizes this tort when a defendant has made it "more burdensome, difficult, or impossible for the distributors to abide by their contracts." (Pl. Resp., Doc. No. 13, at 11-13.) However, because this Court has concluded that Farouk does in fact sufficiently plead tortious interference by inducement, it not reach the merits of this argument.

alongside genuine Farouk CHI products. (*Id*. ¶¶ 21-22.) Farouk further alleges that these counterfeits resemble genuine CHI products, contain the distinctive, well-known CHI trademark, and are thus likely to confuse and deceive customers into believing that the products are genuine. (*Id*. ¶ 22.) Thus, Farouk has alleged and provided factual support for each element of their trademark infringement claim.

Nonetheless, Costco alleges that these pleadings are deficient because Farouk fails to allege "what about these products leads Farouk to believe they are anything other than genuine" or provide a comparison of the genuine and counterfeit products to support the bare assertion that consumers would likely be confused. (Def. Reply, Doc. No. 17, at 9 n.8.) However, the Court cannot hold such detail to be necessary for Farouk's Complaint to satisfy the pleading requirements of the Federal Rules of Civil Procedure. Indeed, the ongoing discussions between the parties as to an appropriate protective order in this case would strongly suggest that Farouk may, at this stage, be unable to point out the precise differences between the counterfeits and their own products without revealing confidential trade secrets. Farouk does clearly allege that the counterfeits, at the surface, "closely resemble genuine CHI products," contain the "distinctive" CHI trademark, and are being offered alongside genuine CHI products. The Court holds that this allegation is more than sufficient to satisfy Farouk's burden at this stage, as Costco is given more than adequate notice of the allegations against it.

### 3.    False Designation of Origins

Farouk's claim for false designation of origins under 15 U.S.C. Section 1125(a) is based on the same factual allegations as its trademark infringement claims. The Fifth Circuit has listed five elements to be proven in a claim arising from this provision: (1)

The defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception was material, in that it was likely to influence consumers' purchasing decisions; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *See Pizza Hut v. Papa John's Intern.,* 227 F.3d 489, 495 (5th Cir. 2000). "[A] false designation of origin case is very often one of "passing off" or "reverse passing off": a defendant markets and sells its product under the trade name or dress of a competitor (to capitalize on the goodwill and brand loyalty the competitor has built up) or markets and sells the competitor's products under defendant's trade name and dress." *Heartbrand Beef, Inc. v. Lobel's of New York, LLC*, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009).

Costco argues that Farouk's Second Amended Complaint is deficient because it does not contain an allegation concerning a false or misleading statement about a product, as required by the first element of this claim. Costco cites *Heartbrand Beef, Inc. v. Lobel's of New York, LLC,* 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009). In *Heartbrand*, the plaintiff complained that Yahoo! sold a company called Lobel's the right to have lobels.com be the first result displayed when the keyword "Akaushi" was entered into the Yahoo! search field. The plaintiff alleged that this violated Section 1125(a) because Lobel's, a seller of beef and competitor of plaintiff, did not offer Akaushi beef, as plaintiff did. The Court, however, dismissed the claim, concluding that, in placing a link to lobels.com in response to a user search, Yahoo! was making no "statement" whatsoever, and particularly no statement about Yahoo! products and services. Here, in contrast, Farouk alleges that Costco sold, at its stores, counterfeit ceramic hairstyling

irons, *bearing the CHI trademark, and placed alongside Farouk CHI products*. Even under the explicit holdings of *Heartbrand*, this is precisely the type of "passing off" or "misleading statement" contemplated under Section 1125(a). Therefore, Farouk's false designation of origins claim need not be dismissed.

### 4.    Unfair Competition

Costco challenges Farouk's claim for unfair competition by arguing that such a claim requires an underlying, independent substantive tort. According to Costco, the independent tortious or illegal act that underlies Farouk's unfair competition claim is the claim for tortious interference with contract or the claims alleging violations of the Lanham Act, none of which are "viable." (Def. Mot. at 12.) However, the Court has concluded that Farouk has adequately stated a claim for relief under both tortious interference of contract and the Lanham Act. As such, Costco's argument as to unfair competition must also be rejected. *See Boston Prof'l Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (noting that " [a]s a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition"). Therefore, because Farouk has sufficiently alleged, and provides factual support for, each of its claims for relief, Costco's Motion to Dismiss under Rule 12(b)(6) is denied.

## III.    MOTION FOR PROTECTIVE ORDER

Costco also moves for a protective order that would prohibit Farouk from learning, through its discovery requests, the identities of Costco's suppliers and consumers.[6] Farouk argues that it needs this information to prosecute its case.

_____

[6] The precise language of the discovery requests at issue are reproduced in Costco's Motion, (Doc. No. 21 at 3-4).

A court has the discretion to limit discovery, including by "requiring that trade secrets or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c). Where the discovery sought is a trade secret, "disclosure is required only if necessary for a fair adjudication of the requesting party's claims or defenses." *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998).

### A.    Arguments of the Parties

Costco argues that because Costco makes efforts to maintain the confidentiality of its suppliers' identities and this information is of commercial value, the identification of its suppliers constitutes trade secrets privileged from discovery by Farouk. The Court holds that ample authority exists to establish that Costco's list of suppliers does constitute a protected trade secret. *John Paul Mitchell*, 17 S.W.3d at 737-38 (holding that supplier identities qualify as trade secrets); *see also Water Servs., Inc. v. Tesco Chems., Inc.,* 410 F.2d 163, 170 (5th Cir. 1969) (holding that the design and composition of an automated water purification system, including the identities of the suppliers of the components, added up to a protectable trade secret, as this system was key to gaining a competitive advantage in the industry). The Court is accordingly persuaded that this information merits protection of some form. Thus, because Costco has met its burden of demonstrating that the requested information warrants protection, the burden shifts to Farouk to establish that the information is "necessary for a fair adjudication of its claims." *Cont'l Gen. Tire*, 979 S.W.2d at 613; *see also John Paul Mitchell*, 17 S.W.3d at 737 (quoting *Cont'l Gen. Tire*, 979 S.W.2d at 613).

Farouk does not appear to dispute that the supplier information it seeks would be subject to protection. Farouk argues, however, that this protection is not absolute. First, Farouk points out that, to the extent that some of Costco's suppliers are supplying counterfeit goods, the trade secret privilege does not extend to them because "the trade secret privilege does not extend to unlawful activity like counterfeiting." (Pl. Resp. Doc. No. 24, at 3.) Farouk further argues that the identity of Costco's suppliers of Farouk products is necessary for Farouk to prove its tortious interference with contract claims, because without it, "Farouk would have no way to confirm the circumstantial evidence that Costco or its affiliates are inducing Farouk's distributors to breach their distribution contracts." (*Id*. at 5.) Farouk argues that this case is materially distinct from the cases on which Costco relies in arguing that this information should not be discoverable, because the information Farouk seeks is not available to it from any other source, and it cannot narrow down which of its 86 distributors could be the target of Costco's inducement. *See John Paul Mitchell*, 17 S.W.3d at 739 (noting that there was evidence that the suppliers could have been identified by ultraviolet codes placed on the bottles); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1 (Cal. Ct. App. 2009) (noting that plaintiff could reduce the number of involved distributors to relatively few and then make inquiries directly to them). Finally, Farouk points out that any potential harm for Costco from disclosing this information could be mitigated with a protective order.

Costco also objects to Farouk's request for its "customer list." In its response, Farouk clarifies that its requests were designed only to elicit information regarding Costco's targeted efforts to sell Farouk products to the salons to which distributors are

11

obligated to sell, and not a list of all of Costco's customers. Farouk argues that disclosure of these advertising efforts will in no way harm Costco.

### B.    Analysis

The Court concludes that, although the supplier information sought by Farouk is a trade secret, Farouk has adequately demonstrated that it needs this information to effectively adjudicate its claims and defenses. Costco maintains that disclosure should only occur pursuant to a two-step process wherein Farouk first makes a showing as to the basis of its counterfeiting claim, and provided the claim is colorable, Costco would then provide the names of the suppliers for these irons. The Court is not persuaded, however, that such a two-step process is necessary. Particularly because the trade secrets of both parties will be subject to a protective order, as discussed further below, the Court is of the opinion that disclosure of this protected information should occur simultaneously, as any harm resulting from such disclosure will be significantly mitigated. Costco also argues that this information is not necessary to prove Farouk's tortious interference claim, because disclosure will only *disprove* the claim. Only disclosure of the information, however, will allow such a theory to be vindicated.

The Court further holds that disclosure of this information will be subject to a protective order. The parties dispute the terms of the proposed protective order in two respects. First, Costco requests that the information be limited to the eyes of outside counsel only, while Farouk asks that such information be received by two employees of the receiving party, one of whom is inside counsel. The Court is persuaded that Farouk's outside counsel are more than able to determine whether Costco's suppliers are Farouk distributors or entities related to Farouk distributors. Accordingly, this information will

be disclosed only to outside counsel. If, after receiving the information, outside counsel finds that it cannot reasonably use the disclosed information, it may make a motion with this Court to designate a neutral third party with knowledge of the industry to examine the issue.

The parties also disagree as to Costco's proposal that the protective order restrict Farouk from suing suppliers based on the fact that they sold Farouk products to Costco. However, the Court does not consider it appropriate to require Farouk to relinquish its substantive rights simply to obtain discovery in this matter. As Farouk points out, the Federal Rules of Civil Procedure and ethics prohibit counsel for Farouk and its counsel from filing frivolous suits. The Court has full confidence that Farouk will not abuse the information it obtains.

Finally, the Court adopts Farouk's proposal and requires that Farouk seek leave of Court before requesting discovery from any suppliers or customers that Costco discloses under the "highly confidential designation" defined in Costco's Motion. Therefore, Costco's Motion for Protective Order is granted in part. The parties will submit a joint protective order in accordance with this Memorandum within five (5) days of entry of this Order.

## IV.     CONCLUSION

For the foregoing reasons, this Court concludes that Costco's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 10) is **DENIED**, and its Motion for Protective Order (Doc. No. 21) is **GRANTED IN PART AND DENIED IN PART**. The parties will submit a joint protective order within five (5) days of entry of this Order.

**IT IS SO ORDERED**.

**SIGNED** this 22nd day of March, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE